Mary RIVERA; Dennis Rivera, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 90–35218.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1990.

Decided Jan. 31, 1991.

Michael J. Riccelli, Johnson, McLean & Riccelli, Spokane, Wash., for plaintiffs-appellants.

Lori M. Beranek, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SCHROEDER, FLETCHER and FARRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Mary and Dennis Rivera appeal the dismissal of their claims against the United States, brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2674 (1988), and the first and fifth amendments to the Constitution. They alleged that Mary Rivera's supervisor at the Air Force base where she was employed retaliated against her for notifying a superior about the supervisor's late arrivals at work and occasional complete absences. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(1) & (6). We affirm.

## FACTS

According to the plaintiffs' complaint, Mary Rivera was a civilian employee of the United States Air Force at Fairchild Air Force Base, in Spokane County, Washington, where she began working in the library in 1980. In December 1986, Ms. Sherry Hokanson became Rivera's supervisor. Rivera soon noticed that Hokanson frequently arrived late for work and occasionally failed to show up at all, providing no notice, guidance, or instruction to Rivera and the other library employees. In February 1987, Rivera informed Captain Schneider, the official responsible for investigating personnel matters at Fairchild, of Hokanson's conduct. Schneider assured Rivera that she would be protected against any reprisals for her disclosures. Nevertheless, soon after Rivera's complaint to Schneider, Hokanson began to harass Rivera with verbal abuse and adverse personnel actions. These reprisals for Rivera's "whistleblowing" continued until April 19, 1988, when the distress from the reprisals, inducing emotional and physical harms including a miscarriage, caused Rivera to quit her job.

On February 23, 1989, the Riveras filed an administrative claim with the United States government, a prerequisite to suit under the FTCA. *See* 28 U.S.C. § 2675(a) (1988). They did not seek redress through

the administrative scheme established for the protection of whistleblowers by the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). The CSRA makes it a "prohibited personnel practice" to retaliate against a federal employee who has disclosed information about other federal employees' violations of laws or regulations, mismanagement, waste, abuse of authority, or public health or safety dangers. 5 U.S.C. § 2302(b)(8) (1988). Under the scheme in effect at the time Rivera allegedly was suffering Hokanson's harassments,[1] Rivera could have presented her grievance to the Office of Special Counsel ("OSC"), which was established to receive and investigate allegations of prohibited personnel practices. 5 U.S.C. § 1206 (1988). When the OSC's investigation reveals "reasonable grounds to believe that a prohibited personnel practice has occurred," the OSC must report it to the agency involved and to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 1206(c) (1988). The OSC then can recommend, and the MSPB can take, corrective action, including a stay of the adverse personnel action constituting the retaliatory conduct. 5 U.S.C. § 1208 (1988).

The government denied the Riveras' administrative FTCA claim, and on November 15, 1989, the Riveras filed a complaint against the United States in federal district court. The complaint contained several claims brought under the FTCA, including ones for wrongful termination, constructive discharge, harm to professional reputation, physiological and psychological harm, physical harm, and emotional distress. The Riveras also alleged that they and their marital community suffered and continue to suffer economic losses, psychological and physiological harm, disruption of their marital relationship, and loss of consortium.[2] Finally, the complaint included a claim that Mrs. Rivera was deprived of her rights under the first and fifth amendments to the Constitution. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

On January 11, 1990, the United States moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, arguing that the CSRA provides the exclusive redress for adverse federal employment actions and thus precludes claims brought under the FTCA and the Constitution. The Riveras countered that the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16, has made the CSRA's administrative remedies non-exclusive. The United States disputed this interpretation of the Whistleblower Protection Act, pointed out that in any event it became effective only after the conduct at issue, and argued that it does not apply retroactively. On February 13, the district court granted the government's motion, finding that the Riveras had conceded the exclusivity of the CSRA remedies prior to 1989 and that the Whistleblower Protection Act does not apply retroactively. The Riveras filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291 (1988).

## DISCUSSION

■ We review *de novo* dismissals for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The central question raised in this appeal is how the Whistleblower Protection Act of 1989 affects the availability of remedies outside the CSRA for harms suffered in the context of federal employment. Before addressing this question, however, we first consider the availability of such alternative

---

1. Congress substantially redesigned the CSRA scheme, subsequent to the conduct at issue in this case, in the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16.

2. Counsel for the Riveras acknowledged at oral argument that none of the claims asserted by *Dennis Rivera is independent from Mary's* claims. Accordingly, our analysis of Mary's claims applies to the entire complaint.

remedies prior to the enactment of the Whistleblower Protection Act.[3]

## A. The Exclusivity of Remedies under the CSRA

■ The Riveras' complaint asserts claims pursuant to both the Constitution, see Bivens, and the FTCA. It is clear that the district court acted properly in dismissing the former claims. The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States, because the United States has not waived sovereign immunity with respect to such claims. See, e.g., Clemente v. United States, 766 F.2d 1358, 1363 (9th Cir.1985), cert. denied, 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986). In fact, the Bivens claims would fail even if the Riveras had named Hokanson or other individual defendants in their complaint. We have held that where, as in the CSRA, "Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations, Bivens actions should not be implied." Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir.1989).

■ It is less clear whether, at the time Mary Rivera suffered the reprisals of Hokanson, such conduct was actionable under the FTCA. The United States asserts that the administrative procedures of the CSRA preclude the alternative remedy of suing under the FTCA. While the Supreme Court has not directly considered the relationship between the CSRA and the FTCA, in two cases the Court has expounded on the comprehensive nature of the remedial scheme embodied in the CSRA and held that the scheme precludes other types of remedies. In Bush v. Lucas, 462 U.S. 367, 388, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983), the Court held that the CSRA precluded a first amendment Bivens claim, describing the CSRA as "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." More recently, in United States v. Fausto, 484 U.S.

439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Court held that the CSRA precluded a government employee's suit for backpay brought in the United States Claims Court pursuant to the Tucker Act, 28 U.S.C. § 1491 (1988). The Court emphasized that the CSRA represents "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." 484 U.S. at 445, 108 S.Ct. at 672. In Bush and Fausto, the Court essentially has sought to preserve this balance by refusing to recognize alternative remedies for government employees whose grievances fall within the scope of the CSRA.

Our circuit has echoed these conclusions about the comprehensive nature of the CSRA scheme. In Kotarski, 866 F.2d at 312, we found that the CSRA precluded the alternative remedy of a first amendment Bivens claim. In Lehman v. Morrissey, 779 F.2d 526 (9th Cir.1985), we held that the CSRA preempted a Forest Service employee's common law tort claims, precluded federal court review of her claims, and represented her "sole recourse". We noted that "in enacting the C.S.R.A. Congress meant to limit the remedies of federal employees bringing claims closely intertwined with their conditions of employment to those remedies provided in the statute." Id. at 527–28. Because it is unclear whether the FTCA claim against the United States in Lehman was at issue on appeal, Lehman cannot strictly control our decision here. Nevertheless, the clear thrust of Bush, Fausto, Kotarski, and Lehman is that Congress's purpose in enacting the CSRA was to channel grievances and disputes arising out of government employment into a single system of administrative procedures and remedies, subject to judicial review. To permit FTCA claims to supplant the CSRA's remedial scheme certainly would defeat that purpose.

---

3. The district court's dismissal order indicates that the Riveras may have conceded that, at the time that Hokanson was harassing Rivera, the CSRA precluded their suit. However, the na-

ture of the Riveras' concession before the district court is unclear, and they have not made such a concession on appeal. We therefore give our full consideration to the issue.

Finally, we note that the only court of appeals to address directly the question of whether the CSRA precludes suit under the FTCA found that it does. In *Premachandra v. United States*, 739 F.2d 392 (8th Cir.1984), the Eighth Circuit held that a government physician could not sue the United States for the mental anguish and economic losses he suffered upon his discharge. In finding that Congress intended the CSRA to preclude relief under the FTCA, the court relied heavily on the principle that "a precisely drawn, detailed statute pre-empts more general remedies." *Id.* at 394 (quoting *Brown v. GSA*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976)). As the *Premachandra* court put it:

> Had Congress intended for [federal employment] decisions to be reviewable in district courts in the context of actions under the Federal Tort Claims Act, it would not have so precisely defined the civil service remedy.

739 F.2d at 394. Against the backdrop of Supreme Court and Ninth Circuit precedent emphasizing the comprehensive, integrated nature of the remedial system provided by the CSRA, we are persuaded by the reasoning in *Premachandra*.

We hold that at the time Mary Rivera was subjected to retaliatory harassment by Hokanson, her remedy was through the CSRA, not the FTCA.[4]

## B. The Whistleblower Protection Act

■ The Riveras argue that while they may not have been able to bring their FTCA claims at the time of Mary Rivera's harm, the Whistleblower Protection Act of 1989 ("Act") retroactively authorizes suit on those claims. The district court held that even if the Act did change prior law to permit FTCA claims arising in the context of government employment, it would not apply retroactively. Without expressing any view about the retroactivity of the Act, we affirm the district court on the alternative ground that the Act does not authorize government employees to bring FTCA claims based on conduct for which redress is available under the CSRA. *See Golden Nugget, Inc. v. American Stock Exchange, Inc.*, 828 F.2d 586, 590 (9th Cir.1987) (court of appeals may affirm district court on alternative legal basis adequately supported in record).

The Riveras argue that the text, purpose, and legislative history of the Act indicate that Congress intended to make available additional remedies outside the CSRA, including FTCA claims, to federal employees who suffer reprisals for blowing the whistle on government waste and wrongdoing. For textual support, the Riveras rely on a section of the Act, codified at 5 U.S.C.A. § 1222 (Supp.1990), that reads:

> Except as provided in section 1221(i), nothing in this chapter or chapter 23 shall be construed to limit any right or remedy available under a provision of statute which is outside of both this chapter and chapter 23.[5]

It is true that this provision admonishes courts against construing the CSRA "to limit any right or remedy available under" a statutory provision outside the CSRA. However, as we held above, at the time the Act came into effect, a suit under the FTCA was not an "available" remedy. The text of section 1222, standing alone, cannot support the Riveras' argument that the Act has done more than preserve existing rights and remedies.

The Riveras supplement their textual argument with an argument about the purpose behind the Act. They first cite section 2 of the Act:

> The purpose of this Act is to strengthen and improve protection for the rights of

---

4. In so holding, we express no view on the CSRA's exclusivity vis-a-vis other remedies. For example, Congress explicitly has preserved the availability of government employees' remedies under various antidiscrimination statutes. *See* 5 U.S.C. § 2302(d) (1988).

5. Section 1221(i) provides that the procedures governing the individual right of action created by the Act, set out in sections 1221(a) through (h), also apply in administrative appeals before the MSPB. 5 U.S.C.A. § 1221(i) (Supp.1990). Chapter 23 establishes the merit system principles governing federal personnel management. 5 U.S.C.A. §§ 2301–05 (Supp.1990).

Federal employees, to prevent reprisals, and to help eliminate wrongdoing within the Government by—

(1) mandating that employees should not suffer adverse consequences as a result of prohibited personnel practices; and

(2) establishing—

(A) that the primary role of the Office of Special Counsel is to protect employees, especially whistleblowers, from prohibited personnel practices;

(B) that the Office of Special Counsel shall act in the interests of employees who seek assistance from the Office of Special Counsel; and

(C) that while disciplining those who commit prohibited personnel practices may be used as a means by which to help accomplish that goal, the protection of individuals who are the subject of prohibited personnel practices remains the paramount consideration.

Pub.L. No. 101–12, § 2, 103 Stat. 16, 16 (1989). The Riveras also point to legislative history emphasizing that Congress sought "to eliminate the inadequacy of current whistleblower protection policy." 135 Cong.Rec. H754 (daily ed. March 21, 1989) (statement of Rep. Hoyer); *see also* 135 Cong.Rec. S2804–05 (daily ed. March 16, 1989) (statement of Sen. Adams) (criticizing current system, particularly Office of Special Counsel).

As the above sources indicate, there is no question that Congress was dissatisfied with whistleblower protection policy. However, in attempting to correct the faults in that policy, Congress focused on the procedures established by the CSRA. A Joint Explanatory Statement, issued in lieu of a House–Senate conference report on the heavily negotiated Act,[6] explains that the Act "seeks to eliminate two types of impediments" to redress for whistleblowers:

One category of impediments is a string of restrictive Merit Systems Protection Board and federal court decisions. Specific provisions of the bill modify or overturn inappropriate administrative or judicial determinations and make it more likely that whistleblowers and other victims of prohibited personnel practices will win their cases.

The second category of impediments are [sic] due to the policies of the Office of Special Counsel and stem from the Special Counsel's view of its role. The clear intent of the [CSRA] was that the Special Counsel should protect and defend the rights of employees who were the victims of prohibited personnel practices.... However, the Special Counsel's view of the role of the Office—protecting the merit system—can and has led to instances in which the Special Counsel has acted to the actual detriment of employees seeking help from that Office.... Unless employees have confidence that they will not be hurt by going to the Special Counsel—that the Special Counsel is a safe haven—the Office can never be as effective as Congress intends in protecting victims of prohibited personnel practices.

135 Cong.Rec. S2782–83 (daily ed. March 16, 1989) (Joint Explanatory Statement).

---

**6.** The legislative history of the Act is rather complicated. Separate bills were introduced in the House and Senate, H.R. 25 and S. 508. The House Committee responsible for H.R. 25 reported it out in August 1987, and one year later, before the full House had acted on H.R. 25, the Senate passed S. 508. Extensive negotiations between Congress and the Reagan Administration over the legislation culminated in an amended S. 508, which both houses passed in October 1988, mere weeks before the close of the 100th Congress. The Joint Explanatory Statement noted above was issued in lieu of a conference report on amended S. 508. President Reagan pocket vetoed the bill.

Early in the 101st Congress, both houses passed S. 20, a bill incorporating the text of amended S. 508 along with a few new changes sought by the Bush Administration that are not relevant here. Neither the House nor the Senate issued any reports on S. 20, choosing instead to identify the relevant legislative history as (1) the committee reports originally issued for H.R. 25 and S. 508, (2) the Joint Explanatory Statement issued for amended S. 508, and (3) a supplementary statement explaining the changes that S. 20 made to the text of amended S. 508. *See* 135 Cong.Rec. H751 (daily ed. March 21, 1989) (statement of Rep. Schroeder, chief House sponsor of S. 20); 135 Cong.Rec. S2781 (daily ed. March 16, 1989) (statement of Sen. Levin, chief Senate sponsor of S. 20).

The Act attacks the latter category of impediments by, for example, more extensively detailing the duties and responsibilities of the OSC to federal employees, 5 U.S.C.A. §§ 1211–1219 (Supp.1990); providing whistleblowers with increased confidentiality, 5 U.S.C.A. §§ 1212(g) & 1213(h) (Supp. 1990); granting whistleblowers an individual right of action to pursue a claim before the MSPB and obtain judicial review of adverse decisions, 5 U.S.C.A. § 1221 (Supp. 1990); and authorizing the award of reasonable attorney's fees and costs to whistleblowers who prevail on their claims, 5 U.S.C.A. § 1221(g) (Supp.1990).

The Riveras argue that the first category of impediments described in the Joint Explanatory Statement includes cases such as *Bush, Fausto, Kotarski,* and *Lehman,* which emphasize the exclusivity of the remedies offered by the CSRA. In other words, they contend that section 1222 is a "specific provision" of the Act that overturns "inappropriate ... judicial determinations" and authorizes suit under the FTCA on their claims. However, the Joint Explanatory Statement itself, upon which the Riveras rely, belies this interpretation. It instructs: "Section 1222 is not intended to create a cause of action where none otherwise exists or to reverse any court decision." 135 Cong.Rec. S2784 (daily ed. March 16, 1989). It is difficult to imagine a clearer statement of legislative intent on this issue.[7]

One more piece of legislative history contradicts the Riveras' reading of the Act. The bill originally introduced in the House, H.R. 25, contained a section entitled "NON–EXTINGUISHMENT OF ALTERNATIVE REMEDIES", which provided that the Act should not be construed to extinguish or lessen rights or remedies available under, *inter alia,* the FTCA. *See* H.R. 25, 100th Cong., 1st Sess., § 10, *reported in* H.R.Rep. No. 274, 100th Cong.,

1st Sess., at 13 (1987). As the House Report explained, this section provided that "any right or remedy ... under the Federal Torts [sic] Claims Act ... is not extinguished by the specific statutory provisions covering prohibited personnel practices." H.R.Rep. No. 274, 100th Cong., 1st Sess., at 40 (1987). The initial Senate bill, S. 508, included no such reference to the FTCA, and the House provision completely disappeared in the ensuing negotiations over the compromise text of the Act. Thus, the issue of what effect the Act would have on FTCA claims was before Congress, and Congress chose to include only the general phrasing of section 1222, "not intend[ing] to create a cause of action where none otherwise exists or to reverse any court decision."

Lacking textual support and facing contrary authority in the legislative history, the Riveras' argument must fail. The Whistleblower Protection Act of 1989 increases protections for whistleblowers, but it does so within the context of the CSRA. The Act does not authorize government employees to bring FTCA claims arising out of conduct addressed by the CSRA.

## CONCLUSION

The district court's dismissal of the Riveras' complaint is AFFIRMED.

---

7. For a contrasting example of a specific provision that does modify an "inappropriate ... judicial determination," see 5 U.S.C.A. § 1221(e)(2) (Supp.1990). That section, addressing an employing agency's affirmative defense that it would have taken the same personnel action against the employee even in the absence of the employee's disclosure, raises the agency's burden of proof from preponderance of the evidence to clear and convincing evidence, thereby modifying the rule announced in *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See* 135 Cong.Rec. S2784 (daily ed. March 16, 1989) (Joint Explanatory Statement).