**Aletha ROLLINS and Jessie Rollins, Plaintiffs–Appellants,**

v.

**John O. MARSH, Jr., Secretary of the United States Department of the Army, et al., Defendants–Appellees.**

No. 90–4583.

United States Court of Appeals, Fifth Circuit.

July 18, 1991.

---

Edward L. Pina, Karam, Naranjo & Kruger, San Antonio, Tex., for plaintiffs-appellants.

Bob Wortham, U.S. Atty., Steven M. Mason, Asst. U.S. Atty., Tyler, Tex., Maj. Robert L. Minor, Dept. of Army, Office of the Judge Advocate Gen., The Pentagon, D. Bruce La Pierre, Barbara L. Herwig, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D.C., for defendants-appellees.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Two federal civil-service employees, Jessie and Aletha Rollins, submitted photographs of Aletha Rollins in the nude for publication. The photographs appeared in print and Jessie Rollins was suspended without pay from his job. The Merit System Protections Board found that the suspension was an improper employment decision under the Civil Service Reform Act, and reinstated Mr. Rollins with full back pay. The Rollinses then filed this suit in federal district court, alleging numerous federal and state grounds of relief. The district court was persuaded that the CSRA offers the exclusive remedy for a challenge of the suspension. We affirm.

I

In 1987 Jessie and Aletha Rollins were both federal civilian employees at the Red River Army Depot in Texarkana, Texas. Aletha Rollins was a missile repairer, and Jessie Rollins was a warehouse worker supervisor. During this time, Mr. Rollins took nude photographs of Mrs. Rollins, and the Rollinses submitted the pictures to several publications. The pictures appeared in 1987 issues of *The Best of Hustler, Gene-*

*sis*, and *Club International.* In February 1987, soon after the *Hustler* and *Genesis* issues hit the newsstands, RRAD security police picked up the Rollinses and questioned them about the photographs, informing them that disciplinary action might ensue. The Rollinses also allege that the RRAD police coerced them into signing written statements concerning the publication of the pictures and circulated those statements. Two weeks after the questioning, a local newspaper reported the publication of the photographs and mentioned that the Rollinses were employed at RRAD.

On May 29, 1987, RRAD removed Jessie Rollins as foreman, ostensibly because the newspaper article had caused unfavorable publicity for RRAD and because Rollins had misused on-duty federal employees for personal business. Rollins appealed his removal to the Merit Systems Protection Board. RRAD dropped the unfavorable-publicity charge before the MSPB hearing. At the appeal hearing, Rollins argued that the removal violated his First Amendment rights, because it was done in response to the publication of the pictures and the newspaper article. He further argued that some of the defendants had conspired to have him removed because of the pictures and that the charge was a pretext. He further argued that his removal was a form of illegal sex discrimination. The government states that "no adverse personnel action was ever taken against Aletha Rollins." The government concedes, however, that Mrs. Rollins's security clearance was revoked on February 13, 1987, and was reinstated several months later. Also, because of the photographs and the news story, Mrs. Rollins received a notice of a proposed three-day suspension, but the suspension never went into effect.

The administrative law judge reversed RRAD's decision to remove Jessie Rollins.

The ALJ found that, although Rollins had misused a federal employee in one minor respect, RRAD's inquiry into the issue came only after, and in response to, the publication of the nude photographs and the newspaper article. Based on these findings, the ALJ held that the removal of Rollins was for "conduct unrelated to his performance or the performance of others" and was therefore a prohibited personnel practice under the Civil Service Reform Act.[1] The ALJ held, however, that Rollins failed to establish a *prima facie* case of sex discrimination. The judge then ordered RRAD to reinstate Rollins with full back pay, accrued benefits, and attorneys fees. The order informed Rollins of the timing and procedures for seeking review of the ALJ's decision. Jessie Rollins accepted the relief ordered by the ALJ and sought no further review. According to the summary judgment record, Aletha Rollins did not pursue administrative relief.

In February 1988, the Rollinses filed a complaint, naming the Secretary of the Army and fifteen RRAD officials and employees as defendants. The complaint alleged violations of a broad array of federal constitutional and statutory rights as well as state-law rights. The Rollinses' allegations included, among other things, violations of their rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and violations of their right to privacy under federal and Texas common law and under the Privacy Act of 1974.[2] They also alleged defamation and breach of an implied covenant of good faith and fair dealing.

The Rollinses sought damages specifically under 42 U.S.C.A. §§ 2000e–16, 1985(2) & (3), and 1986; 28 U.S.C.A. § 2680;[3] *Bivens v. Six Unknown Named Agents of*

---

1. 5 U.S.C.A. § 2302(b)(10) (West Supp.1991).

2. 5 U.S.C.A. § 552a. In one of the headings in their brief, the Rollinses' cite the Privacy Act. But the brief contains no argument concerning the relevance of that Act. Nor did the Rollinses even cite the Act in their complaint. Therefore,

we will not address the applicability of that statute.

3. As the Rollinses on appeal do not urge as grounds for relief 42 U.S.C.A. §§ 1985 and 1986, or 28 U.S.C.A. § 2680, those issues have been abandoned.

*Fed. Narcotics Bureau;*[4] the Federal Tort Claims Act; and the state-law theories of defamation and implied covenant of good faith and fair dealing. The district court granted defendant's motion to dismiss, alternatively for summary judgment, on the ground that all the allegations arose from the Rollinses' federal civilian employment and under *Bush v. Lucas*[5] were precluded by the comprehensive federal statutory remedies provided by the CSRA. The court noted that, although *Bush* involved only a First Amendment claim, the *Bush* analysis had been applied to claims under the First, Fourth, Fifth, and Sixth Amendments.[6] The court also relied on the Supreme Court's opinion in *Schweiker v. Chilicky*,[7] and the federal appellate court decisions that followed *Schweiker*, for the proposition that the CSRA precludes *Bivens* recovery for actions that arise out of federal employment.

## II

The Civil Service Reform Act of 1978,[8] replaced the old civil-service system, an "outdated patchwork of statutes and rules built up over almost a century,"[9] with "an elaborate 'new framework for evaluating adverse personnel action against [federal employees].' "[10] This new framework provided "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."[11] The portion of the CSRA most relevant to this case, Chapter 23, prohibits

certain personnel practices and establishes merit-system principles that govern civil-service employment.[12] The merit-system principles include treating employees fairly and equitably and "with proper regard for their privacy and constitutional rights."[13] Prohibited personnel practices include the taking of any "personnel action" that violates merit-system principles.[14] The Act also provides federal employees with remedies against prohibited personnel practices, remedies that include staying or correcting the practice and seeking disciplinary action against the offenders.[15]

The question is whether under *Bush v. Lucas* the CSRA provides the exclusive remedy for the claims brought by the Rollinses. In *Bush* a federal civil-service employee of NASA was demoted and his pay was reduced after he made public statements critical of NASA. NASA alleged that the statements were unfounded and intemperate and that they impeded the operation of the agency. Appealing through the civil-service system, the employee eventually won reinstatement with full back pay. During the administrative appeal process, however, he also filed a *Bivens* suit against the defendants for money damages, alleging violations of his First Amendment rights. Under the assumption that there had been a First Amendment violation and that the CSRA remedy had been less than fully compensatory, the Court declined to recognize a remedy beyond that provided by the CSRA. The Court stated that "[b]ecause such claims

4. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

5. 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

6. *Gleason v. Malcom*, 718 F.2d 1044 (11th Cir. 1983).

7. 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).

8. Pub.L. No. 95–454, 92 Stat. 1111 *et seq.* (codified as amended at 5 U.S.C.A.).

9. S.Rep. No. 95–969, 2nd Sess. 3 (1978), 1978 U.S.Code Cong. & Admin.News, 2723, 2725.

10. *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988).

11. *Id.* 108 S.Ct. at 672.

12. 5 U.S.C.A. §§ 2301–02.

13. *Id.* § 2301(b)(2); *Saul v. United States*, 928 F.2d 829, 833 (9th Cir.1991).

14. *Id.* § 2302(b)(11).

15. These remedies were refined and enhanced by the Whistleblower Protection Act of 1989 § 3(a)(8), Pub.L. No. 101–12 § 3(a)(8), 103 Stat. 16, 18. We discuss the CSRA's original, unamended remedies, because they were in effect when the events in this case took place.

*arise out of an employment relationship* that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, ... it would be inappropriate ... to supplement that regulatory scheme with a new judicial remedy." [16]

## III

■ The Rollinses argue first that *Bush* is not controlling and that the CSRA does not provide the exclusive remedy, because this suit does not arise out of the Rollinses' federal employment relationship. They note that, unlike in *Bush* where the employee was demoted for making statements concerning his job, the Rollinses were disciplined for engaging in protected activity that was unrelated to their work. It is true that most of the cases applying the *Bush* principle involve protected employee conduct or speech that was related to the job. This fact, however, does not undercut the finding that the Rollinses' claims arose out of their employment relationship with the federal government. All the actions taken by the defendants were related to status as federal employees: Mr. Rollins was temporarily suspended from his job, and Mrs. Rollins temporarily lost her security clearance.[17] We have little doubt but that these actions constitute personnel decisions under the CSRA [18] and hence arise out of the employment relationship.

■ The Rollinses also distinguish *Bush* on the basis that their complaint presents claims different from those presented in *Bush.* They argue that *Bush* and the CSRA do not preclude their *Bivens* claims, because *Bush* involved only First–Amend-

ment violations, whereas they allege violations of various other constitutional rights. We are unpersuaded, however, that Congress intended the CSRA to exclude First–Amendment *Bivens* claims but not other *Bivens* claims.

One whose Fourth Amendment rights have been violated by federal officers acting under color of law may sue the officers for money damages.[19] It is also true that the Constitution can be the sole basis for a private cause of action against a federal official. Nonetheless, *Bivens* actions are available only if the court finds (i) "no special factors counselling hesitation in the absence of affirmative action by Congress" and (ii) "no explicit congressional declaration" that money damages not be awarded.[20] In *Bivens* the Court found no obstacle to an implied constitutional right of action.

In *Bush,* however, the Court found that, although Congress had not expressly precluded the remedy sought by the aggrieved employee, a *Bivens* First–Amendment suit, there were "special factors counselling hesitation." [21] Those factors included the comprehensive and exhaustive nature of the administrative scheme under the CSRA. The Court distinguished *Bivens* by noting that

[t]he question [in *Bush* ] is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation.[22]

---

16. *Bush,* 103 S.Ct. at 2406 (emphasis added).

17. Furthermore, even if we accepted the assumption that the Rollinses' protected activity was not directly related to the job, some cases have applied *Bush* even in such circumstances. *E.g., Kotarski v. Cooper,* 866 F.2d 311 (9th Cir. 1989) (holding *Bush* applicable when federal employee demoted allegedly because his supervisor disapproved of his living arrangements with woman friend). The Rollinses insist that none of Mrs. Rollins's claims have been adjudicated. The summary judgment record, how-

ever, gives no indication that Aletha Rollins pursued her administrative remedies.

18. 5 U.S.C.A. § 2302(a)(2)(A) (listing personnel actions covered by statute).

19. *Bivens v. Six Unknown Named Agents of Fed. Narcotics Bureau,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

20. *Id.* at 396–99, 91 S.Ct. at 2004–06.

21. 103 S.Ct. at 2411–12.

22. *Id.* at 2416–17.

The Court declined to imply any additional remedy.

The Supreme Court has not held expressly that the CSRA in all cases precludes federal employees from bringing *Bivens* actions arising out of their employment relationship. Numerous circuits, however, have held that the CSRA precludes at least some *Bivens* actions brought in such circumstances.[23] And no court has yet identified a *Bivens* claim that falls outside the *Bush* analysis. We decline to do so here. We are persuaded that the Rollinses' *Bivens* claims are precluded by the CSRA.[24]

## IV

■ The Rollinses also seek relief under the Federal Tort Claims Act. The Eighth and Ninth Circuits have held that FTCA actions, like *Bivens* actions, are precluded by the CSRA. In *Premachadra v. United States*[25] a doctor was wrongfully discharged by the Veteran's Administration. He appealed the decision to the MSPB; the MSPB concluded that the VA had been "reckless or heedless" in terminating the doctor and therefore reinstated him with full back pay. The doctor, however, filed a civil action for tort damages under the FTCA, alleging mental anguish and other damages not fully compensated by the MSPB remedy. The Eighth Circuit upheld the district court's decision to dismiss the doctor's suit, holding that the procedural safeguards provided under the CSRA were the exclusive remedy: "While we should be reluctant judicially to erode the broad remedy provided by the Federal Tort Claims Act, we are equally reluctant to ignore a congressional intent that civil service remedies be the exclusive means for federal employees to challenge wrongful termination decisions."[26] Then, after discussing the civil-service appellate procedures available to federal employees, the court concluded that "[h]ad Congress intended for such decisions to be reviewable in district courts in the context of actions under the Federal Tort Claims Act, it would not have so precisely defined the civil service remedy."[27]

The Ninth Circuit, quoting and following *Premachandra*, reached the same conclusion in *Rivera v. United States*.[28] The court noted that, although the Supreme Court has not spoken directly on the relationship between the FTCA and the CSRA, the Supreme Court's decisions in *Bush* and *United States v. Fausto*[29] describe the CSRA remedies as being the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government. Thus the *Rivera* court concluded that "Congress's purpose in enacting the CSRA was to channel grievances and disputes arising out of government employment into a single system of administrative procedures and remedies, subject to judicial review. To permit FTCA claims to supplant the CSRA's remedial scheme certainly would defeat that purpose."[30] We agree. The remedies available to the

---

**23.** *Stephens v. Secretary, Department of Health and Human Serv.*, 901 F.2d 1571 (11th Cir.), *cert denied*, — U.S. —, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990); *Feit v. Ward*, 886 F.2d 848, 854–56 (7th Cir.1989); *Hill v. Department of Air Force*, 884 F.2d 1318, 1320–21 (10th Cir.1989); *Kotarski v. Cooper*, 866 F.2d 311 (9th Cir.1989); *McIntosh v. Turner*, 861 F.2d 524 (8th Cir.1988); *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C.Cir. 1988); *Braun v. United States*, 707 F.2d 922, 926 (6th Cir.1983).

**24.** *Cf. Palmero v. Rorex*, 806 F.2d 1266, 1270–71 (5th Cir.), *cert. denied*, 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987) (holding that federal employee cannot file for damages against supervisor for an unconstitutional adverse personnel action, when Congress has provided adequate administrative remedy). *See generally Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir.1983)

(holding that *Bush* analysis applies to claims under First, Fourth, Fifth, and Sixth Amendment violations), *quoted approvingly in Gremillion v. Chivatero*, 749 F.2d 276, 279 (5th Cir. 1985); and *Saul*, 928 F.2d at 837–40.

**25.** 739 F.2d 392 (8th Cir.1984).

**26.** *Id.* at 394–94.

**27.** *Id.* at 394.

**28.** 924 F.2d 948 (9th Cir.1991).

**29.** 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988).

**30.** 924 F.2d at 951.

Rollinses under the CSRA preclude recovery under the FTCA.

## V

■ The Rollinses also assert a Title VII[31] claim. The CSRA expressly preserves federal employees' rights and remedies under several anti-discrimination statutes, including Title VII.[32] But the Rollinses failed to pursue any Title VII claims they might have had. Mr. Rollins alleged to the ALJ that his removal was based at least partly on sex discrimination; however, when the ALJ rejected this claim and informed Mr. Rollins of his rights to administrative or judicial review, Rollins accepted the decision without appealing. Civil service discrimination claims are reviewable by the MSPB.[33] The MSPB's decisions in such cases are appealable only if the appeal is filed within 30 days of the date on which the petitioner received notice of the decision.[34] Mr. Rollins waited 93 days to file his complaint; therefore, review of his discrimination claim is time-barred. Mrs. Rollins Title VII claim also fails. The government rightly argues that the Rollinses' complaint fails to include any allegations sufficient to make out a Title VII claim with respect to Mrs. Rollins. Moreover, the summary judgment record does not demonstrate that Aletha Rollins exhausted her administrative remedies.[35]

## VI

■ Finally, the Rollinses contend that the court erred in dismissing their state-law claims. Every circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions.[36] We follow and find that the Rollinses' state-law claims are preempted by the CSRA.

31. 42 U.S.C.A. § 2000e–16 (West 1981).

32. 5 U.S.C.A. § 2302(d).

33. 5 U.S.C.A. § 7702(a)(1) (West 1980).

34. 5 U.S.C.A. § 7703(b)(1) (West Supp.1991).

35. The Rollinses inserted into the record on appeal two letters from Aletha Rollins to the RRAD EEOC officer. Because these letters were

The sole remedy for the Rollinses' claims is provided in the CSRA. The district court did not err in dismissing the complaint. AFFIRMED.

not before the district court, we will not consider them.

36. *E.g., Saul v. United States*, 928 F.2d 829, 840–43 (9th Cir.1991); *Berrios v. Department of Army*, 884 F.2d 28, 31–33 (1st Cir.1989); *Broughton v. Courtney*, 861 F.2d 639, 641–44 (11th Cir.1988).