United States Court of Appeals
Fifth Circuit

**F I L E D**

December 28, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10716

_____

KAN PLASAI,

Plaintiffs-Appellant

versus

NORMAN Y. MINETA, SECRETARY, DEPARTMENT OF
TRANSPORTATION; MICHAEL C. MILLS; THOMAS E. STUCKEY; JAY
LAFLAIR; PETER J KERWIN; In their individual and
professional capacities,

Defendants-Appellees

_____

Appeal from the United States District Court for
the Northern District of Texas, Dallas Division

3:04-CV-1477

_____

Before GARWOOD, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[1]

Kan Plasai appeals from the summary judgment in

favor of the defendants on her <u>Bivens</u> claim and her

state law claim for intentional infliction of emotional

distress. We affirm.

---

[1] Pursuant to 5th Cir. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

I.

Kan Plasai worked for the Federal Aviation Administration ("FAA") as a computer security specialist, responsible for, <u>inter</u> <u>alia</u>, administering the network, upgrading equipment, and ensuring system conformity. In early 2003, Plasai suspected that Melissa Kerwin, a receptionist, had been using her work computer to access personal email and online chat rooms. Melissa Kerwin is the daughter of Peter Kerwin, an FAA administrator in the agency's Fort Worth regional office. Plasai did not report her suspicions, but rather copied emails from Melissa's computer and took them home to her husband, a self-employed contractor. Her husband then notified Peter Kerwin of the unauthorized use via email. Peter Kerwin forwarded the email to his division manager, who began a formal investigation into both Melissa Kerwin's and Kan Plasai's actions.[2]

During the investigation, the FAA confiscated and retained Plasai's work computers for four weeks. As a

_____

[2] The FAA Standards of Conduct prohibit employees from "[d]ivulg[ing] any official information obtained through or in connection with their Government employment to any unauthorized person. <u>FAA HRPM</u> § 4.1.4(a). Plasai was investigated for breaching that standard.

result, she had to work overtime to meet federal software deployment deadlines. While still under investigation, Plasai found that two other FAA employees had reconfigured their computers in violation of agency policy. When she reported those findings to Michael Mills, her supervisor, she was accused of "snooping around;" Plasai cites this accusation as further evidence of humiliating, discriminatory conduct meant to "drive her from her job." Shortly after this second incident, Plasai's husband confronted one of the two employees. Plasai was placed on administrative leave, without a hearing nor any other opportunity to challenge her suspension.

Plasai exhausted her administrative remedies and then brought suit in federal district court claiming discrimination based on race and national origin under Title VII (42 U.S.C. § 2000e-16, et seq.) against Norman Mineta, Secretary of Transportation. In a separate complaint, she sued Norman Y. Mineta; Michael C. Mills, her immediate supervisor; Thomas E. Stuckey, and Peter J. Kerwin, both FAA administrators in the Fort Worth

regional office; and Jay LaFlair, an FAA investigator. She alleged a civil rights violation under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971); and negligence and intentional infliction of emotional distress under Texas state law. The parties to both complaints waived their right to proceed before a district court judge and agreed to trial before a magistrate judge pursuant to 28 U.S.C. § 636(c).[3] Shortly thereafter, the two cases were consolidated into the present suit.

Defendants moved to dismiss plaintiff's Bivens and state law claims.[4] The magistrate judge decided that all claims but the Title VII claims were preempted by the Civil Service Reform Act ("CSRA"), Pub.L.No. 95-454, 92 Stat. 1111 (1978). The magistrate judge held, in the alternative, that plaintiff failed to establish the

---

[3] "Under 28 U.S.C. § 636(c)(1), a district court, with the voluntary consent of the parties, may authorize a magistrate [judge] to conduct proceedings and enter final judgment in a case; such judgment is then appealable to the circuit court directly." Trufant v. Autocon, Inc., 729 F.2d 308, 309 (5th Cir. 1984).

[4] Although defendants submitted a "motion to dismiss", the magistrate judge treated it as a motion for summary judgment because the motion relied on matters outside the pleadings for support.

violation of a federally protected right sufficient to sustain a <u>Bivens</u> claim. Accordingly, the magistrate judge granted the motion to dismiss the <u>Bivens</u> and state law claims. Plasai timely appealed the magistrate judge's dismissal of the <u>Bivens</u> claim and her claim under state law for intentional infliction of emotional distress.[5] Because we agree that Plasai has not established the violation of a federally protected right, and that the magistrate judge correctly determined that the CSRA preempts her state law claim for intentional infliction of emotional distress, we affirm the dismissal.

## II.

We review the magistrate judge's summary judgment ruling <u>de novo</u>. See <u>Lockette v. Greyhound Lines, Inc., 817 F.2d 1182, 1185 (5th Cir. 1987)</u> ("[T]his court applies the same standard of review to the findings and conclusions of the magistrate that we would apply to a decision of the district court.") and <u>Hanks v.</u>

---

[5] Plasai does not challenge the dismissal of her state law negligence claims.

Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992) ("This court reviews the grant of summary judgment motion de novo, using the same criteria used by the district court in the first instance."). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. Celotex, 477 U.S. at 322-3.

III.

On appeal, Plasai asserts three points of error: 1)

6

that the district court incorrectly determined that her Bivens claim failed to allege the violation of a federally protected right; 2) that the district court incorrectly determined that her Bivens claim was preempted by the CSRA; and 3) that the district court incorrectly determined that her state law claim for intentional infliction of emotional distress is preempted by the CSRA.

A. *Plasai's Bivens claim does not assert a violation of a federally protected right.*

Plasai claims that the government's search and seizure of her work computer constituted a civil rights violation under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). On appeal, she argues that the government interfered with her constitutional right to prevent the "possible criminal and subversive activity of Ms. Kerwin in using her FAA workplace computer to make a threat against the life of the President." The magistrate judge held that to the extent that Plasai claimed that her Bivens claim

was founded on her right to report and provide evidence of suspected criminal activity, no such right exists under the Constitution. On appeal, Plasai emphasizes that she is not challenging the nonenforcement of a criminal statute, but rather challenging a violation of her right - and duty, under the FAA Standards of Conduct - to prevent criminal activity. She claims, without analysis or explanation, that her "affirmative obligation under the FAA Standards of Conduct to report suspected illegal or criminal activity" gives her standing to challenge a search and seizure that prevented her from complying with those obligations.

We need not decide today whether such a right actually exists. Assuming, arguendo, that Plasai has asserted a protected right, Plasai's Bivens claim still fails. To review: Plasai discovered that Melissa Kerwin was using her work computer to access personal email and online chat rooms, and that in those online chat rooms Melissa posted entries critical of President Bush and containing other vulgar and inappropriate language. Her characterization of events misstates their actual

sequence: in fact, Plasai first observed Melissa Kerwin's alleged violation. Then, rather than reporting the suspected violation to her supervisor, Plasai took the information home to her husband. In turn, her husband contacted Peter Kerwin and informed him of the violation. At that point, the FAA began its investigation, which resulted in the seizure of her work computer.

Even if the right she asserts (prevention of criminal activity) is federally protected, Plasai has not shown that she was attempting to <u>prevent</u> criminal activity in a situation where, in fact, the alleged criminal activity had already occurred. Nor has she shown that the <u>post</u> <u>hoc</u> seizure of her computer prevented her from exercising her "right" and obligation to prevent a violation by reporting it. Ms. Plasai rightly notes that her duties under the FAA Standards of Conduct require her to report misuse of computing resources, as well as suspected illegal or criminal activity. The FAA Standards of Conduct, however, also forbid Ms. Plasai from divulging official information

obtained in connection with her employment to any unauthorized person. Plasai took the information she had compiled against Melissa home and discussed that information with her husband. She has not claimed that such behavior - which precipitated the seizure, since it was itself a violation of FAA policy - was necessary to fulfilling her alleged duty to prevent criminal activity. Furthermore, Plasai has not shown that the agency's seizure violated her hypothesized right to prevent criminal activity. In fact, the events giving rise to the FAA's investigation of Plasai also resulted in an investigation against Melissa Kerwin for the very abuse of computing resources that Plasai had identified.

Accordingly, we hold that Plasai's <u>Bivens</u> claim fails to assert a violation of a federally protected right and affirm the district court's grant of summary judgment on that claim. Because we conclude that the <u>Bivens</u> claim is not viable in any event, we need not address Plasai's argument that her <u>Bivens</u> claim is not precluded by the CSRA.

B. *Plasai's state law claim is precluded by the CSRA.*

The magistrate judge held that the CSRA preempted Plasai's state law claim of intentional infliction of emotional distress, brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.,[6] was preempted by the Civil Service Reform Act and the remedies it affords her. See Pub.L. No. 95-454, 92 Stat. 1111 (1978). The CSRA provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." Rollins v. Marsh, 937 F.2d 134, 137 (5th Cir. 1991). The Supreme Court has described this panoply of defenses as an "elaborate remedial system" and declined to permit additional remedies. Bush v. Lucas, 462 U.S. 367, 368 (1983); see also id. at n.30

---

[6] To the extent that Plasai is pursuing a tort claim against the individuals involved, the FTCA makes clear that it is the exclusive remedy for compensation for tortious acts by a federal employee acting in the scope of his employment. 28 U.S.C. § 2679. At no point does Plasai argue that the individual defendants were acting outside of the scope of employment.

11

(discussing the sections of the CSRA providing protection).

Plasai asserts that the magistrate judge's ruling is incorrect because she is not directly covered by the CSRA, but rather falls under the FAA's Personnel Management System ("FAA PMS"). 49 U.S.C. § 40122(g). While the FAA PMS explicitly states that as a general rule, the provisions of the CSRA do not apply, it then makes specific exceptions that render certain CSRA provisions applicable to FAA employees. Id. § 40122(g)(2). Included among those exceptions are the protections against "prohibited personnel actions" contained in the CSRA at 5 U.S.C. § 2302(b), along with the related investigative and enforcement provisions contained in Chapter 12 of Title 5. See 49 U.S.C § 40122(g)(2)(A). For these reasons, we hold that the CSRA does apply in this case, by virtue of its specific incorporation into the FAA PMS.

Although the magistrate judge did not explicitly note the connection between the CSRA and the FAA PMS, we conclude that his analysis was correct in its result. He

first considered whether the agency's action constituted a "prohibited personnel action" under the CSRA; holding that it did so, he then held that the CSRA preempts such claims. A recent Supreme Court decision indicates approval of his methodology. Whitman v. Dep't of Transp., --- U.S. ----, 126 S.Ct. 2014, 2014 (June 05, 2006) (noting that the FAA PMS specifically incorporates particular provisions of the CSRA, and that the appropriate course of action is to determine where and whether the claims fit within that statutory scheme).

Furthermore, we agree with his conclusions. The magistrate judge held that the FAA's seizure of Plasai's work computer constituted a "personnel action" for the purposes of the CSRA because the seizure was tied to her alleged violation of the FAA's Standards of Conduct for its employees. His holding comports with this circuit's precedent: we have found that conduct constituted a personnel action where "[a]ll the actions taken by the defendants were related to status as federal employees[.]" Rollins, 937 F.2d at 138 (where actions included temporary suspension and loss of security

clearance). The same is true in this case: defendants seized *only* Plasai's work computer, from her office, in investigating an alleged violation. Since the seizure falls within the types of personnel actions covered by the CSRA as adopted by the FAA PMS, the magistrate correctly concluded that the CSRA preempts Plasai's state law claim. We have held that such "'comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government'" necessarily preempt FTCA claims. Rollins, 937 F.2d at 139 (quoting Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991)). "'To permit FTCA claims to supplant the CSRA's remedial scheme certainly would defeat that purpose.'" Rollins, 937 F.2d at 139 (quoting Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991)); see also Grisham v. United States, 103 F.3d 24, 26 (5th Cir. 1997); Bell v. Laborde, 2006 WL 2930169 at *1 (5th Cir., Oct 13, 2006). We therefore affirm the magistrate judge's determination.

14

CONCLUSION

We conclude that the magistrate judge correctly held that Plasai failed to state a viable <u>Bivens</u> claim and that her state law tort claim is preempted by the CSRA. For these reasons, the judgment of the magistrate judge is AFFIRMED.