# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30347

United States Court of Appeals
Fifth Circuit

**FILED**

January 6, 2016

Lyle W. Cayce
Clerk

THOMAS R. TUBESING,

> Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

> Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before PRADO, SOUTHWICK, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Thomas Tubesing ("Tubesing") appeals the district court's dismissal of his claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.* The district court found that it lacked subject-matter jurisdiction based upon its conclusion that Tubesing's FTCA claims were precluded by the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended at 5 U.S.C. § 1101 *et seq.*). We AFFIRM.

## I.

In October 2003, Tubesing began employment with the United States as a contract employee in the Division of the Strategic National Stockpile, a

No. 15-30347

subset of the Centers for Disease Control and Prevention ("CDC"). Within a year, Tubesing was transferred to the Division's Program Preparedness Branch and assigned to work as a Public Health Advisor in Louisiana.

On December 10, 2006, Tubesing was hired as a full-time federal employee, and later received a promotion on April 15, 2007. With the promotion, Tubesing agreed to move from Atlanta to Baton Rouge to work exclusively on Louisiana's bio-terrorism preparedness program. Shortly after arriving in Baton Rouge, Tubesing allegedly discovered and subsequently reported what he considered "substantial and specific dangers" to public health. Tubesing was terminated on December 7, 2007.

After his termination, Tubesing appealed to the Merit Systems Protection Board ("MSPB") with claims that his firing was in retaliation for reporting the perceived public health threats. On November 25, 2008, an administrative law judge found in Tubesing's favor and ordered he be restored to his *status quo ante* position, retroactive to December 7, 2007, by January 19, 2009. Tubesing was placed back on the CDC payroll by January 9, 2009, but alleges that other issues—including administrative leave removal, job restoration, back pay, contributions, and health insurance—remained. Aggrieved that he had not been adequately restored to his status quo position, Tubesing filed a petition for enforcement with the MSPB on January 21, 2009. An administrative law judge again found for Tubesing, and the MSPB affirmed the judge's ruling.

Tubesing asserts that in relation to his reports of public health threats, his termination, and his appeals and petitions, the CDC never fully restored him to his position and took various other adverse actions against him.

On October 9, 2014, Tubesing filed suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, alleging that his employers' actions constituted numerous torts, including

2

No. 15-30347

fraud and intentional infliction of emotional distress. In response, the United States moved to dismiss Tubesing's claims pursuant to Fed. R. Civ. P. 12(b)(1) on December 30, 2014. On March 24, 2015, the district court granted the United States' motion and dismissed Tubesing's claims. This appeal followed.

## II.

The question before us is whether Tubesing can proceed under the FTCA to seek redress for his employment-related claims; or, as the district court determined, Tubesing's FTCA claims are precluded by the CSRA because they fall within the statute's intended reach. Tubesing argues that the CSRA applies only to "personnel decisions" that are specifically listed in the statute, such as "a promotion" or "a reinstatement." Our review of the statute and applicable law, however, leads us to conclude that Tubesing's claims are covered under the CSRA.

## III.

The CSRA includes an elaborate framework for evaluating adverse personnel action against federal employees. *Rollins v. Marsh*, 937 F.2d 134, 137 (5th Cir. 1991) (citing *United States v. Fausto*, 484 U.S. 439 (1988)). This framework aims to provide "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* Additionally, Chapter 23 of the CSRA—the portion of the CSRA most relevant to this case—prohibits certain personnel practices and establishes merit-system principles that govern civil-service employment. *Id.* The merit-system principles include treating employees fairly and equitably and "with proper regard for their privacy and constitutional rights." *Id.* "Prohibited personnel practices include the taking of any 'personnel action' that violates merit-system principles." *Id.* The CSRA further provides federal employees with remedies against prohibited personnel practices, remedies that

3

include staying or correcting the practice and seeking disciplinary action against the offenders. *Id.*

This court, in *Rollins v. Marsh*, considered whether two federal employees' claims against the United States for constitutional and privacy violations were precluded by statutory remedies provided by the CSRA. *Id.* at 134. The *Rollins* plaintiffs sought relief under the FTCA, stemming from their claim of improper suspension from federal employment after submitting nude photographs for publication. *Id.* at 135. Recognizing that "the CSRA remedies [are] the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government," we affirmed the district court's dismissal of the Rollins' claims because their available remedies under the CSRA precluded recovery under the FTCA. *Id.* at 139–40 (citing *Bush v. Lucas*, 462 U.S. 367 (1983) and *Fausto*, 484 U.S. at 439)). In consideration of the CSRA's purpose, we refused "to permit FTCA claims to supplant the CSRA's remedial scheme [or] to defeat [the statute's] purpose." *Id.* at 139 (citing *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991)).

The Ninth Circuit has also held, in certain instances, that actions brought by federal employees under the FTCA are precluded by the CSRA. Those decisions—which turned on a critical examination as to whether the respective plaintiffs' claims fit within the prohibited personnel practices and employment-related issues covered by the CSRA—are particularly illustrative in this matter.

In *Lehman v. Morrissey*, 779 F.2d 526 (9th Cir. 1991), Joan Lehman brought several employment-related claims, including a claim for intentional infliction of emotional distress, against her former supervisors in the United States Forest Service and the United States. Upon review of the kinds of activities complained of by Lehman, the Ninth Circuit determined that the

4

No. 15-30347

FTCA claims were preempted by the CSRA; thus, Lehman's remedies were covered by the statute. *Id.* at 526–27. That court further noted that Lehman's claims involving lack of effective training, obstruction of her ability to compete, and interference with the merit system were specifically prohibited by the CSRA. *Id.* at 527. Thus, the Ninth Circuit affirmed the judgment of dismissal, as "[the CSRA] provided Lehman's sole recourse." *Id.* at 528.

Four years later, the Ninth Circuit held that a plaintiff's claims—including rape and sustained physical sexual abuse—could go forth under the FTCA because they were not preempted by the CSRA. *Brock v. United States*, 64 F.3d 1421 (9th Cir. 1995). In allowing the plaintiff to pursue her claims under the FTCA, the Ninth Circuit recognized the CSRA's broad purpose and preemptive effect, but determined that "[the defendant's] rape and continued physical sexual abuse of [the plaintiff] fit[] no category of personnel actions listed in § 2302(a)(2)." *Id.* at 1424. In distinguishing *Lehman*, the *Brock* court cautioned that its ruling resulted from the specifics of that case. *Id.* at 1425. Thus, "because the alleged rape and physical abuse d[id] not involve personnel actions and was not perpetrated with respect to the supervisor's authority, the CSRA d[id] not preempt Brock's FTCA claim." *Id.*

IV.

The CSRA clearly and categorically includes the specific activities and claims of which Tubesing complains. Here, Tubesing, a federal employee, lists a multitude of perceived agency infractions in furtherance of his FTCA claims. Tubesing, for example, alleges:

> Agency officials conspired to and did sabotage [his] ability to accomplish his job duties and objectives, and schemed to impede the performance of his duties, by requiring him to perform work outside his job description, implementing onerous reporting requirements, intimidating other employees who cooperated with him, shifting blame to him for shortcomings and problems caused by others, interfering with his ability to discover pre-

existing problems and shortcomings within the state agency, making materially false and fraudulent statements and representations, falsifying documents, testifying falsely in the administrative proceeding following his termination, depriving Louisiana citizens of the benefits of good and efficient decision making, and committing other negligent and wrongful acts that caused [him] to suffer harm, financial losses, and severe emotional distress.

It is clear that all of Tubesing's claims stem from his employment relationship with the CDC. It is even more clear that each of Tubesing's claims—which directly relate to the relevant § 2302(a) and (b) subsections describing personnel practices and prohibitions—finds a home within the larger CSRA framework.

Section 2302's prohibited personnel practices broadly cover a number of violations in an effort to provide examples of the type of claims that may be subject to employee action. Tubesing's litany of complaints—including that his employer sabotaged his ability to accomplish his job duties and objectives, required him to perform work outside his job description, and blamed him for mistakes by others—all fall squarely within the CSRA's sphere. The CSRA's reach further extends to Tubesing's claims involving training, reassignment and transfer, and changes in working conditions. Hence, because Tubesing is a federal employee, and due to the nature of his employment-related claims, the CSRA provides Tubesing's sole remedy against his employer.

V.

In an effort to overcome the preclusive effect of the CSRA, Tubesing points this court to several actions that are not specifically listed as prohibited personnel practices. According to Tubesing, these actions fall outside the CSRA's scope. We disagree. Congress never intended that the CSRA would cover *only* those prohibitions expressed therein. Tubesing's allegations, which

No. 15-30347

involve claims that the CSRA is expected to cover, however, clearly fall within the statute's confines.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**