**Cathy ANDERSON, Appellant,**

v.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO; American Federation of Government Employees, AFL–CIO, District 10; American Federation of Government Employees, AFL–CIO, Council 215; American Federation of Government Employees, AFL–CIO, Local 3506, Appellees.**

No. 01–09–00994–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 7, 2011.

 

Cathy A. Anderson, Pikesville, MD, pro se.

James Roddy Tanner, Tanner & Associates, P.C., Fort Worth, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

In this appeal, we decide whether a federal government employee's state law tort claims against a labor union are completely preempted by the Civil Service Reform Act of 1978. *See* 5 U.S.C. §§ 2301–2305 (West 1994 & Supp. 2010), 5 U.S.C. §§ 7101–7154 (West 1996 & Supp. 2010) (West 2010). Finding no complete preemption under the circumstances presented in this case, we reverse and remand.

## BACKGROUND

Anderson was a group supervisor for the Social Security Administration Office of Disability Adjudication and Review ["ODAR"] in Houston, Texas. Scott Stier was a case intake assistant and reported to Anderson. On July 24, 2007, Anderson issued a proposed three-day suspension to Stier for failing to associate mail in a timely manner. On October 2, 2007, Stier sent a letter to the Agency's Office of Special Counsel, in which he asserted that Anderson had been confiscating and hoarding his mail, thereby violating his due process rights. Stier also sent a copy of this letter to Anderson, Melissa Huett, a hearing office manager for ODAR, and Mark Mephail, a hearing office administrative law judge for ODAR. On November 1, 2007, Huett placed Stier on a one-day suspension, rather than the three-day suspension recommended by Anderson.

Stier appealed his suspension to the Merit Systems Protection Board, alleging that ODAR's suspension of him was in retaliation for his complaint about Anderson. On July 15, 2008, an administrative law judge ["ALJ"] upheld Stier's suspension. In his order, the ALJ stated, "I find, however that because Huett's decision to suspend [Stier] was issued . . . just four months after the disclosure of which she had knowledge, a reasonable person could conclude that the disclosure was a contributing factor in the agency's decision to suspend [Stier]." Nevertheless, the ALJ upheld Stier's suspension because he found that ODAR would have taken the personnel action against Stier even if there had been no whistleblowing involved.

According to allegations in her petition, Anderson discovered in February or early March of 2009 that Stier, who was also an Executive Vice–President of Local 3506 of the American Federation of Government Employees, AFL–CIO, had been sending emails to other union members in Anderson's office that contained a link to the Local 3506's website where they would find "disturbing" information about Anderson. Anderson accessed the website and found the following summary of Stier's personnel matter: " . . . the [ALJ] found that Stier's disclosure was based on a reasonable belief that Anderson was hoarding

mail and that action constituted an abuse of her authority."

After seeing the information about her on the union's website, Anderson filed suit in state court against the American Federation of Government Employees, including the Local 3506, Council 215, and District 10 [hereafter, collectively "the union."], alleging libel, slander, and intentional infliction of emotional distress.[1]

The union filed a motion to dismiss based on lack of subject-matter jurisdiction. Specifically, the union claimed that Anderson's state tort claims were preempted by the Civil Service Reform Act of 1978 ["CSRA"], which is codified in Title 5 of the United States Code. The trial court granted to union's motion and dismissed Anderson's case. This appeal followed.

## PREEMPTION UNDER THE CSRA

### Standard of Review and Applicable Law on Preemption

■■■■ In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). In order to prevail, the party asserting the plea must show that, even if all the allegations in the plaintiff's plead-

1. Anderson had previously filed suit in state court against Stier, alleging that his October 2, 2007 letter about her to the ODAR's Office of Special Counsel was libelous. The State court action was removed to federal court. The federal district court dismissed Anderson's claims against Stier and substituted the United States as the defendant pursuant to the Federal Tort Claims Act. The federal court then dismissed Anderson's libel, slander and defamation claims based on limitations and dismissed her intentional infliction of emotional distress claim for failure to exhaust her administrative remedies. The Fifth Circuit recently reversed, holding that Stier, not the United States, was the proper

party because he was acting outside the scope of his employment when he allegedly defamed her. *See Anderson v. United States*, 364 Fed. Appx. 920 (5th Cir.2010). Because Stier was the proper party and Anderson filed her claim within the 1–year state of limitations for defamation claims in the State of Texas, *see* Tex. Civ. Prac. & Rem.Code Ann. § 16.002(a), the dismissal based on limitations was also erroneous. *Anderson*, 364 Fed.Appx. at 925. Similarly, because the United States was not the proper party, there were no administrative remedies to exhaust before bringing her intentional infliction of emotional distress claim. *Id.*

ings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex.App.-Austin 2000, no pet.).

■■ Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's ruling on the plea. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Upon review, we consider the pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). We do not consider the merits of the case; our jurisdiction is limited to reviewing the grant or denial of the plea to the jurisdiction that was filed. *Id.; see also* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp. 2010); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 686–87 (Tex.App.-Dallas 2003, pet. denied). We do not have jurisdiction to consider grounds outside those raised in the plea to the jurisdiction. *First Trade Union Sav. Bank*, 133 S.W.3d at 687; *Davies*, 158 S.W.3d at 61.

■ In its motion to dismiss, the union acknowledged that Anderson's petition alleged state court causes of action, *see* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (2005) (libel); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993) (intentional infliction of emotional distress), but argued that Anderson's state court causes of action were completely preempted by the CSRA. To establish complete preemption, a defendant must show that:

(1) the federal statute contains a civil enforcement provision that creates a cause of action and both replaces and protects the analogous area of state law;

(2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and

(3) there is a clear Congressional intent that the claims brought under the federal law be removable to federal court.

*Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.2000). To determine whether the union has established the first element of the *Johnson* test, we must review the provisions of the CSRA upon which it relies.

## The Civil Service Reform Act

In its motion to dismiss, the union alleged two bases for its contention that the CSRA completely preempts Anderson's state court causes of action. First, the union argued that Anderson's suit involved a "prohibited personnel action" and thus was preempted by section 2303 of the CSRA. Second, the union argued that Anderson's suit alleged an "unfair labor practice" by the union and thus was preempted by section 7101 of the CSRA. We will address each respectively.

### 1. Title II of the CSRA, 5 U.S.C. § 2302 et seq., Prohibited Personnel Action

■■ Federal employees are generally precluded from bringing state tort claims when the claims arise "out of an employment relationship that is governed by comprehensive procedural and substantive provisions" which provide meaningful remedies. *Bush v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648 (1983). The CSRA affords such remedies to federal employees. The Act provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988).

The CSRA authorizes federal employees to challenge "prohibited personnel practices" by their supervisors. *See* 5 U.S.C. § 2302; *Saul v. United States,* 928 F.2d 829, 833, 834 (9th Cir.1991) (employee had redress under CSRA for claims of defamation by supervisor). It is founded upon certain merit-system principles that govern civil service employment and provides that employees are to be treated fairly and equitably and "with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(2).

■ Under the Act, prohibited personnel practices include the taking of any "personnel action" that violates its merit-system principles. 5 U.S.C. § 2302. Specifically, a prohibited personnel practice means any action that is described in subsection (b) of Section 2302, which states that "any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority," engage any of the prohibited acts listed in the subsection. 5 U.S.C. § 2302(b)(1)-(11). Therefore, an integral element of a "prohibited personnel practice" is the taking of "personnel action" which is defined to include actions such as, but not limited to, an appointment, a promotion, a disciplinary or corrective action, a detail, transfer or assignment, or a decision concerning pay, benefits, or education or training. 5 U.S.C. § 2302(a)(2)(A). Thus, essentially, when a plaintiff's claims arise out of his or her employment relationship with the federal government and all supervisory actions taken by the defendants are related to the plaintiff's status as a federal employee, the actions constitute personnel decisions under the CSRA, and are therefore exclusively remedied thereunder. *Rollins v. Marsh,* 937 F.2d 134, 138 (5th Cir.1991). Thus, the question this Court must decide is whether Anderson's claim alleges the taking of a "personnel action" within the meaning of the CSRA.

The union relies on *Bush, Fausto, Saul,* and *Rollins,* in support of its argument that Anderson's claims are preempted. 462 U.S. at 367, 103 S.Ct. 2404, 484 U.S. at 439, 108 S.Ct. 668, 928 F.2d at 843, 937 F.2d at 138. In *Bush,* the plaintiff, an aerospace engineer for NASA, complained on television that his job was "worthless," a "travesty," and that NASA was fraudulently spending taxpayer money. 462 U.S. at 369–70, 103 S.Ct. 2404. He was subsequently demoted and his pay grade was reduced. *Id.* at 370, 103 S.Ct. 2404. Bush then filed suit against Lucas, the director of NASA, for defamation. *Id.* at 371, 103 S.Ct. 2404. After Bush's suit was dismissed, the Fifth Circuit affirmed, holding that in light of the remedies available under the CSRA, Bush had no private cause of action. *Id.*

In *Fausto,* the plaintiff, an employee of the Department of the Interior Fish and Wildlife Service, was suspended from his job for 30 days. 484 U.S. at 439, 108 S.Ct. 668. He then filed suit against the United States seeking back pay under the federal Back Pay Act. *Id.* at 443, 108 S.Ct. 668. The Court of Appeals held that his suspension was unlawful and awarded Fausto back pay for the period of his suspension. *Id.* The Supreme Court reversed, holding that "[t]he CSRA established a comprehensive system for reviewing personnel action taken against federal employees." *Id.* at 455, 108 S.Ct. 668.

In *Saul,* a Social Security Administration claims administrator sued two of his supervisors alleging that they had seized and opened his private mail and defamed him. 928 F.2d at 831. The Ninth Circuit held that the CSRA preempted Saul's common law tort claims because his petition alleged prohibited personnel practices by his supervisors. *Id.* at 833–34.

In *Rollins,* the plaintiff, a federal government employee for the Army, took nude pictures of his wife, also a federal government employee for the Army, which were subsequently published in Hustler Magazine. 937 F.2d at 135–36. As a result, Rollins was temporarily suspended from his job and his wife lost her security clearance. *Id.* at 136. Rollins appeal his removal to the Merit Systems Protection Board, and the ALJ held that Rollins's removal was a prohibited personnel action under the CSRA and ordered Rollins reinstated. *Id.* The Rollinses then filed suit, naming the Secretary of the Army and fifteen supervisors and employees as defendants. *Id.* The complaint alleged violations of a broad array of federal constitutional and statutory rights as well as state-law rights such as defamation. *Id.* The Fifth Circuit held that because the Rollinses' claims arose out of their employment relationship with the federal government, and all the actions taken by the defendants were related to their status as federal employees, the actions taken against them were personnel decisions under the CSRA. *Id.* at 138. As such, the remedies provided by the CSRA preempted the Rollinses' state-law remedies for adverse personnel actions. *Id.* at 140.

In this case, the union's reliance on *Bush, Fausto, Saul,* and *Rollins* is misplaced. Each of those cases involve an allegation of a prohibited personnel practice against the plaintiff, and the plaintiff's alleged claims arose directly out of those prohibited personnel practices. Such is not the case here, where Anderson alleges no personnel action against her by her federal employer.

Instead, we believe that the present case is more like *Gutierrez v. Flores,* 543 F.3d 248 (5th Cir.2008) and *Gilding v. Carr,* 608 F.Supp.2d 1147 (D.Ariz.2009). In *Gutierrez,* the plaintiff, a federal employee of the Army and union representative, received a 30–day suspension from the Army, his employer, after an investigation revealed that Gutierrez had been taking money that his union had intended for him to use to pay a cleaning services for its meeting room and then cleaning the room himself. 543 F.3d at 249–250. After learning that the Army had taken personnel action against Gutierrez, a fellow union member sent a letter to the Department of Labor and the local and national presidents of the union asking why Gutierrez had been provided a representative at union expense when he had acknowledged taking funds from the union. *Id.* at 250. Based on this letter, Gutierrez sued three fellow union members in state court, alleging libel, libel per se, and intentional infliction of emotional distress. *Id.* The case was removed to federal court, and Gutierrez moved to remand. *Id.* at 251. The union, relying on *Bush, Saul,* and *Rollins,* contended that remand was inappropriate because Gutierrez's state law causes of action were completely preempted by the CSRA. *Id.* at 253. The Fifth Circuit held that the union's reliance on those cases was misplaced because those cases concerned "disputes arising from the employment relationship wherein a government employer or supervisor takes an action against a government employee that allegedly violated the merit principles outlined in Title II of the SCRA." *Id.* at 253. In contrast, Gutierrez's claim did "not involve the employment relationship or any adverse employment action." *Id.* at 254. Although there was an "adverse employment action"—Gutierrez's suspension by the Army—his suit against the union solely concerned the allegedly defamatory letter sent by union members about his suspension. *Id.* at 254 n. 8. Similarly, in this case, no employment action was alleged to have been taken against Anderson. Furthermore, the subject of Anderson's defamation suit is

not any statements that were made during the course of Stier's disciplinary proceeding. Instead, Anderson's suit against the union is based solely on the alleged defamatory statements that the union published about her on its website.

In *Gilding*, the plaintiff, a manager with the Federal Aviation Administration ["FAA"] sued a former FAA employee, two air traffic controllers assigned to his office who were also local union officers, and the air traffic controllers' union for allegedly publishing defamatory statements about him on a blog. 608 F.Supp.2d at 1149–50. Gilding alleged that because of the defamatory blog, he was placed on administrative leave and removed from his managerial position. *Id.* at 1150. He did not sue the FAA or any of the employees involved in the decision to remove him from his managerial position. *Id.* The court noted that the CSRA prohibits only "personnel practices" that are undertaken by "any employee who has authority to take, direct others to take, recommend or approve any personnel action" with respect to the plaintiff." *Id.* at 1151 (quoting 5 U.S.C. § 2302(b)). The court then concluded that the union was clearly not "an employee" who could recommend or approve a personnel action against Gilding. *Id.* at 1152. As such, Gilding's defamation claim against the union was not preempted. *Id.* at 1154.[2] Here, as in *Gilding*, the only defendant is the union that Anderson

contends defamed her. And, as in *Gilding*, there is no evidence that the union was taking, recommending, or approving any personnel action against Anderson when it placed the allegedly defamatory statements about her on its website.

Because Anderson's complaint does not involve a "prohibited personnel practice" by an "employee who has authority to take, direct others to take, recommend or approve any personnel action" against Anderson, section 2302 of the CSRA does not preempt her defamation claim against the union.

## 2. Title VII of the CSRA, 5 U.S.C. § 7101 et seq., Unfair Labor Practices

██ The union also argues that Anderson's claims are preempted under section 7107 et seq., which governs union affairs and collective bargaining agreements. Title VII of the CSRA allows collective bargaining in the public sector and provides a detailed methodology for dispute resolution. *See* 5 U.S.C. §§ 7116(d), 7121, 7122. The statute created the Federal Labor Relations Authority ["FLRA"] and gave it the responsibility of supervising the collective bargaining process, promulgating administrative rules for federal labor relations, and adjudicating disputes over matters such as negotiability, bargaining units, arbitration, and representa-

---

**2.** We note that there have been cases in which a supervisor's defamation claims against subordinates have been held to be preempted. *See Schwartz. v. Int'l Fed. of Prof'ls & Technical Eng'rs*, No. 3:07–CV–0978–1, 2007 WL 3196347 (N.D.Tex. Oct. 31, 2007) (memo. op.) (holding that claims based on alleged defamatory statements made during course of grievance were preempted by CSRA because, as union representative, subordinate was recommending personnel action against supervisor by filing grievance); *Greene v. Am. Fed. of Gov't Employees, AFL–CIO, Local 2607*, No.

Civ. A. 05–0408 RMU, 2005 WL 3275903 (D.D.C. Sept. 7, 2005) (holding that supervisor's libel claims against supervisee and supervisee's union representative were preempted by CSRA because statements giving rise to supervisor's claims were made during course of administrative grievance against supervisor). Here, the alleged defamatory statements were not made by Anderson's subordinate Stier, were not made during the course of any disciplinary proceedings, and were not made as a part of any recommended personnel action against anyone.

tion elections. *Montplaisir v. Leighton*, 875 F.2d 1, 2 (1st Cir.1989).

Section 7118 of the CSRA provides that "any agency or labor organization" charged "with having engaged in or engaging in an unfair labor practice" shall be investigated by the General Counsel for FLRA. 5 U.S.C. § 7118(a)(1). The section then provides a detailed administrative scheme that must be followed in actions before the FLRA. *See* 5 U.S.C. § 7118(a)(2)-(8). The union argued that because Anderson did not file a grievance for an "unfair labor practice," she cannot now proceed with her state court claims. Thus, the issue this Court must decide is whether Anderson's claim alleges an "unfair labor practice."

Section 7116 of the CSRA provides that it is an unfair labor practice for a union:

(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter [5 USCS §§ 7101 et seq.];

(2) to cause or attempt to cause an agency to discriminate against any employee in the exercise by the employee of any right under this chapter [5 USCS §§ 7101 et seq.];

(3) to coerce, discipline, fine, or attempt to coerce a member of the labor organization as punishment, reprisal, or for the purpose of hindering or impending the member's work performance or productivity as an employee or the discharge of the member's duties as an employee;

(4) to discriminate against an employee with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition;

(5) to refuse to consult or negotiate in good faith with an agency as required by this chapter [5 USCS §§ 7101 et seq.];

(6) to fail or refuse to consult or negotiate in good faith with an agency as required by this chapter [5 USCS §§ 7101 et seq.];

(7)(A) to call, or participate in, a strike, work stoppage, or to call, or participate in, a strike, work stoppage, or slowdown, or picketing of an agency in a labor-management dispute if such picketing interferes with an agency's operations, or (B) to condone any activity described in subparagraph (A) of this paragraph by failing to take action to prevent or stop such activity; or

(8) to otherwise fail or refuse to comply with any provision of this chapter [5 USCS §§ 7101 et seq].

5 U.S.C. § 7116(b)(1)-(8).

The union argues that Anderson's libel claim alleges an "unfair labor practice" under subsections (5) & (8) of the statute above. Regarding subsection (5), there is no allegation by Anderson that the union failed or refused to consult or negotiate with her agency, the Social Security Administration. Thus, we turn to the union's argument that the catch-all provision found in section 7116(b)(8), which provides that it is an unfair labor practice to fail or refuse to comply with any provision of this chapter, was triggered by Anderson's allegation that the information contained on the union's website defamed her.

The union points out that under section 7102 of the statute, "[e]ach employee shall have the right to form, join, or assist any labor organization" and that such right includes the right "to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the government, the

Congress, or other appropriate authorities." 5 U.S.C. § 7102(1). The union argues that to the extent that Anderson's petition alleges that the union "exceeded its authority to communicate views of the labor organization under Section 7101 and 7102," such action would be an "unfair labor practice" under section 7116(b)(8).

The union made a similar argument in *Gutierrez v. Flores.* In *Gutierrez,* the union argued that the plaintiff's defamation suit against several union officials constituted an allegation of an "unfair labor practice" and should have been brought pursuant to the grievance procedures in Chapter 71 of the CSRA. 543 F.3d at 254–55. The Fifth Circuit disagreed, holding that "on the face of his well-pleaded complaint, [Gutierrez] alleges that [the union officials'] letter and e-mail were defamatory and intended to inflict emotional distress. Nothing in the CSRA pertains to this specific scenario." *Id.* at 255. Because Gutierrez's complaint did not allege an "unfair labor practice," his claim was not preempted by section 7116(b)(8) of the CSRA. *Id.* The Court also concluded that the union's contention that it was exercising its free speech rights might be a defense to liability on Gutierrez's libel claim, but it would not serve as a basis for federal question jurisdiction. *Id.* at 255 n. 11.

The same is true in this case. Anderson's complaint, like that in *Gutierrez,* is that the statements on the union's website defamed her and caused her emotional distress. As noted by the *Gutierrez* court, "[n]othing in the CSRA pertains to this specific scenario." *Id.* at 255. To the extent that the union is arguing that it was merely exercising its right under section 7102 to communicate the union's views, such right might be a defense to liability, but would not confer federal question jurisdiction. *Id.* at 255 n. 11.[3]

The union relies on *Montplaisir v. Leighton* to argue that the unfair labor practices provisions of the CSRA preempt Anderson's state law claims. In *Montplaisir,* four air traffic controllers who were fired for participating in an unlawful strike filed a legal malpractice suit against the union lawyers who had assured them during the collective bargaining process that if they participated in the strike they ran no significant risk of losing their jobs. 875 F.2d at 1–2. The court held that that the plaintiffs' claims raised an unfair labor practices charge under section 7116(b)(7), *id.* at 3, and that under such circumstances, the "CSRA necessarily precludes the maintenance of state-law malpractice claims against lawyers acting as the union's emissaries in the collective bargaining process." *Id.* at 8.

This case is more like *Gutierrez* than *Montplaisir.* Anderson's claim that she was defamed by the information on the union's website is not included within the list of "unfair labor practices" set forth in section 7116(b) because "[n]othing in the CSRA pertains to this specific scenario." *Gutierrez,* 543 F.3d at 255. In contrast, the plaintiffs' petition in *Montplaisir* alleged an unfair labor practice under section 7116(b)(7), which prohibits participating or condoning a strike. Also, the actions complained of in *Montplaisir* were committed during the course of the collective bargaining process. Such is not the case here.

---

**3.** We also note that section 7102 gives employees the right to present "the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities." 5 U.S.C. § 7102(1). There is nothing in the record to show that the statements on the union's website were directed to any of the entities listed in the statute.

Because Anderson's complaint does not involve a "unfair labor practice" by the union, section 7116(b) of the CSRA does not preempt her defamation claim against the union.

## CONCLUSION

Because this case does not involve an adverse personnel action or an unfair labor practice, the union failed to satisfy the first prong of the *Johnson* test for preemption, i.e., showing that the CSRA contains a civil enforcement provision that both replaces and protects Anderson's state law claims. *See Gutierrez,* 543 F.3d at 255–56. Therefore, the trial court erred in dismissing her state court claims.

Accordingly, we reverse the judgment of the trial court and remand for further proceedings.