

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00480-CV

———————————————————

IN RE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES AND
AFGE LOCAL 1006, Relators

Original Proceeding
153rd District Court of Tarrant County, Texas
Trial Court No. 153-349075-24

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Real party in interest Nathan Wiggin sued relators American Federation of Government Employees and AFGE Local 1006 (collectively, the Unions)[1] in state court. The Unions filed this mandamus petition after the trial court denied their plea to the jurisdiction. They contend that because Wiggin's lawsuit is preempted by the Civil Service Reform Act of 1978 (CSRA),[2] the Federal Labor Relations Authority (FLRA) has exclusive jurisdiction over Wiggin's claims, and the trial court therefore abused its discretion by denying their jurisdictional plea. Because we agree that Wiggin's claims are preempted—and the trial court thus lacks subject-matter jurisdiction—we conditionally grant mandamus relief.

## I. BACKGROUND

Wiggin sued the Unions in January 2024. At the time, he was employed by the Federal Bureau of Prisons (BOP) and worked at the Federal Medical Center in Fort

---

[1]The American Federation of Government Employees is a national labor organization that represents employees throughout the federal government. *Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force*, 716 F.3d 633, 635 (D.C. Cir. 2013). It is a federation of local unions, each of which maintains a measure of autonomy but operates under the national organization's umbrella. *See Sawyer v. Am. Fed'n of Gov't Emps.*, 96-CV-7599 (TPG), 1998 WL 307055, at *1 (S.D.N.Y. June 11, 1998) (outlining the federation's organizational structure). AFGE Local 1006 is one such local union that represents certain employees at the Federal Medical Center in Fort Worth.

[2]5 U.S.C. § 1101 *et seq.*

Worth. He served as AFGE Local 1006's secretary and was an elected member of its executive board ("e-Board").

In his petition, Wiggin alleged that AFGE Local 1006's president, Shawonla Williamson, "objected to [his] representing a non-union employee with a discrimination claim against BOP" and that, as a result, she and AFGE Local 1006 "undertook a course of retaliatory actions against [him] that interfered with [his] employment." Specifically, he alleged that

- AFGE Local 1006 refused "to provide Wiggin with union representation in connection with protected activity that [he] has engaged in complaining against BOP";

- Williamson sent Wiggin a text message in which she threatened to retaliate against him for representing a non-union employee and "indicated [that] she would have [him] removed as [u]nion [s]ecretary";

- "[T]he AFGE [Local] 1006 e-Board stopped responding to almost all of Wiggin's emails and text messages requesting union representation and . . . attempting to resolve conflicts arising from protected activity";

- Williamson threatened to "retaliate against Wiggin" by disclosing at the February 2023 union meeting his protected activity;

- Williamson—as an act of retaliation—"removed Wiggin's union duties and refused to assign him any union work";

- As further acts of retaliation, Williamson "removed Wiggin's access to the union e[]mail account" and "removed Wiggin from the [AFGE] Local 1006 Facebook page," thereby denying him "notice of opt-in lawsuits and information provided by Facebook";

- AFGE Local 1006 failed to notify Wiggin that the February 2023 e-Board meeting was cancelled and did not allow him to attend another e-Board event;

- AFGE Local 1006 denied Wiggin's request for union representation "after a BOP supervisor changed [his] working conditions in violation of" the governing labor–management agreement;

- AFGE Local 1006 denied Wiggin's request for union representation after his supervisor denied him the opportunity to obtain the supervision hours that he needed to obtain an independent mental-health license;

- AFGE Local 1006 denied Wiggin's request for union representation after his performance evaluation was lowered in violation of a labor–management agreement and failed to file a grievance regarding this incident;

- AFGE Local 1006 denied Wiggin's request for union representation "after BOP removed his ability to work overtime, reassigned him to a different location, and removed [his] compressed work schedule";

- "Williamson refused to file a grievance or [to] take action on Wiggin's behalf" regarding the removal of his compressed work schedule;

- Williamson improperly filed charges to remove Wiggin as a local union officer;

- Williamson harassed Wiggin by sending him a referral for mental-health services and sending copies of the referral to other BOP employees;

- Williamson changed the locks on the local union house and denied Wiggin access to the new keys;

- AFGE Local 1006 denied Wiggin's request for union representation "for an investigation/interview";

- AFGE Local 1006 denied Wiggin's request for union representation after "BOP moved [his] office into a converted inmate cell";

- AFGE Local 1006 denied Wiggin's request for union representation "when BOP exceeded a 120-day deadline to finish an investigation" regarding the removal of Wiggin's compressed work schedule and his ability to work overtime; and

- The American Federation of Government Employees failed to provide Wiggin with investigation reports regarding the charges that he and Williamson had filed against each other.

Based on these allegations, Wiggin requested injunctive and declaratory relief. Further, although he did not assert any specific causes of action, he sought damages for harm to his professional reputation, mental anguish, and emotional distress, as well as reimbursement of his costs and attorney's fees.

The Unions filed special exceptions and a plea to the jurisdiction asserting that the CSRA completely preempted Wiggin's lawsuit and therefore deprived the trial court of subject-matter jurisdiction. In September 2024, the trial court held a hearing on the jurisdictional plea. At the hearing's conclusion, the trial court declined to rule on the jurisdictional issue. Instead, it sustained the Unions' special exceptions and instructed Wiggin to amend his petition to allege specific state-law causes of action so that it could better evaluate whether the CSRA preempted his claims. Although Wiggin never amended his petition, the trial court eventually signed an order denying the Unions' plea to the jurisdiction. The Unions then filed this petition for writ of mandamus.[3]

## II. DISCUSSION

In a single issue, the Unions argue that the trial court lacks subject-matter jurisdiction over Wiggin's lawsuit because of CSRA preemption. We agree.

---

[3]Despite our direction to do so, Wiggin did not respond to the petition. *See* Tex. R. App. P. 52.4.

## A. Standard of Review

"Essential to a court's power to decide a case is subject-matter jurisdiction." *In re Tex. Conf. of Seventh-Day Adventists*, 652 S.W.3d 136, 142 (Tex. App.—Fort Worth 2022, no pet.) (citing *TitleMax of Tex., Inc. v. City of Austin*, 639 S.W.3d 240, 245 (Tex. App.—Houston [1st Dist.] 2021, no pet.)). The plaintiff bears the initial burden to affirmatively show that the court has subject-matter jurisdiction. *Id.*

When the trial court lacks subject-matter jurisdiction, mandamus relief is appropriate. *In re Diocese of Lubbock*, 624 S.W.3d 506, 512 (Tex. 2021) (orig. proceeding) (first citing *In re Crawford & Co.*, 458 S.W.3d 920, 929 (Tex. 2015); and then citing *In re Entergy Corp.*, 142 S.W.3d 316, 320–21 (Tex. 2004)).

Lack of jurisdiction may be raised by a plea to the jurisdiction when an agency's exclusive jurisdiction over the dispute forms the basis for the jurisdictional challenge. *See In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 627 (Tex. 2007) (orig. proceeding) (concluding that trial court had abused its discretion by denying relator's jurisdictional plea because the Public Utilities Commission had exclusive jurisdiction over the lawsuit's core claims); *cf. Tex. Comm'n on Env't Quality v. Vecinos Para El Bienestar De La Comunidad Costera*, No. 03-21-00395-CV, 2023 WL 4670340, at *1 (Tex. App.—Austin July 21, 2023, no pet.) (mem. op.) (holding that trial court erred by denying appellants' plea to the jurisdiction because the federal Natural Gas Act granted federal appellate courts exclusive jurisdiction to review challenges to state agency permits required by federal law for natural-gas terminals). We review de novo a trial court's ruling on a

6

plea to the jurisdiction. *Diocese of Lubbock*, 624 S.W.3d at 512; *TitleMax of Tex., Inc.*, 639 S.W.3d at 245. "A court should deny a plea to the jurisdiction when 'the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.'" *Diocese of Lubbock*, 624 S.W.3d at 512 (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). But "if the pleadings affirmatively negate jurisdiction," the plea should "be granted without affording the plaintiff[] an opportunity to replead." *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)).

## B. CSRA Preemption of State-Law Claims

Federal preemption of state law may dictate either the choice of law to be applied to a plaintiff's claims or the choice of forum in which the claims must be adjudicated. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545 (Tex. 1991); *Brauer v. Brauer*, No. 02-11-00109-CV, 2012 WL 4121120, at *3 (Tex. App.—Fort Worth Sept. 20, 2012, no pet.) (mem. op.). Only choice-of-forum preemption implicates a trial court's subject-matter jurisdiction. *Brauer*, 2012 WL 4121120, at *3. Because, as we discuss below, the CSRA requires complaints of "unfair labor practices" to be filed with the FLRA, *see Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263*, 489 U.S. 527, 533, 109 S. Ct. 1282, 1287 (1989), the Unions' preemption argument involves choice-of-forum preemption, not merely choice-of-law

7

preemption, *see Gorman*, 811 S.W.2d at 545–46 (differentiating between choice-of-law and choice-of-forum preemption).

Title VII of the CSRA—which governs labor organizations and collective bargaining among federal employees—deals with employee–management relations and provides a detailed dispute-resolution methodology. *See Wood v. Am. Fed. of Gov't Employees*, 255 F. Supp. 3d 190, 195 (D.D.C. 2017) (mem. op.); *Anderson v. Am. Fed'n of Gov't Emps., AFL-CIO*, 338 S.W.3d 709, 713 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). This statute established the FLRA "and gave it the responsibility of supervising the collective bargaining process[;] promulgating administrative rules for federal labor relations[;] and adjudicating disputes over matters such as negotiability, bargaining units, arbitration, and representation elections." *Anderson*, 338 S.W.3d at 716–17 (citing *Montplaisir v. Leighton*, 875 F.2d 1, 2 (1st Cir. 1989)). "Accordingly, complaints that a labor organization has committed an 'unfair labor practice' are . . . preempted by the CSRA[] and must be filed with the [FLRA]." *Wood*, 255 F. Supp. 3d at 195 (first citing *Karahalios*, 489 U.S. at 532–33, 109 S. Ct. at 1286–87; and then citing *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990)).

The CSRA enumerates a number of unfair labor practices. *See* 5 U.S.C. § 7116(b)(1)–(8). As relevant here, it is an unfair labor practice for a union "to interfere with, restrain, or coerce any employee in the exercise" of his statutory rights under Title VII of the CSRA or "to coerce, discipline, fine, or attempt to coerce" a

8

union member "as punishment, reprisal, or for the purpose of hindering or impeding the member's work performance or productivity as an employee or the discharge of the member's duties as an employee." *Id.* § 7116(b)(1), (3).

## C. Application to Wiggin's Claims

Because Wiggin's lawsuit is wholly predicated on alleged unfair labor practices, the CSRA completely preempts it. As detailed above, Wiggin's petition alleged that the Unions engaged in "a course of retaliatory actions" against him, including repeatedly denying his requests for union representation. But these alleged retaliatory actions—which undergird Wiggin's entire lawsuit—clearly constitute unfair labor practices under the CSRA.[4] *See Hudson v. Am. Fed'n of Gov't Emps.*, Civil Action No. 19-2738 (JEB), 2020 WL 3035039, at *7 (D.D.C. June 5, 2020) (mem. op.) (recognizing that a union's "[r]etaliating against a member is . . . considered an unfair labor practice" (citing 5 U.S.C. § 7116(b)(3))); *see also Bourdon v. Canterbury*, 813 F. Supp. 2d 104, 107 (D.D.C. 2011) ("Because a union's breach of its duty of fair representation qualifies as an 'unfair labor practice' under the CSRA, claims for such a breach are within the FLRA's exclusive jurisdiction."); *Buesgens v. Coates*, 435 F. Supp. 2d 1, 4 (D.D.C. 2006) (mem. op.) (acknowledging that the CSRA

---

[4]The nature of Wiggin's allegations distinguishes this case from *Anderson*, in which our sister court held that the CSRA did not preempt the appellant's libel, slander, and intentional-infliction-of-emotional-distress claims. *See* 338 S.W.3d at 712, 719. The court's holding in *Anderson* was based on its conclusion that the appellant's lawsuit "d[id] not involve an adverse personnel action or an unfair labor practice." *See id.* at 719. But unlike the claims in *Anderson*, Wiggin's requests for relief are based entirely on alleged unfair labor practices.

"governs all claims arising from a union's alleged breach of the duty of fair representation" and that such complaints "may only be brought before the FLRA"). Consequently, Wiggin's lawsuit is preempted, and the trial court lacks subject-matter jurisdiction. *See Gorman*, 811 S.W.2d at 545–46.

## III. CONCLUSION

Having concluded that the trial court lacks subject-matter jurisdiction over Wiggin's lawsuit because of CSRA preemption, we conditionally grant the Unions' petition for writ of mandamus, vacate the trial court's order denying the Unions' plea to the jurisdiction, and direct the trial court to dismiss the underlying case for want of jurisdiction. Our writ will issue only if the trial court does not comply.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: December 5, 2024